DLD-161                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1408
_____

YVETTE MADISON,
                    Appellant

v.

JEFFERSON HOSPITAL

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 09-cv-05582)
District Judge:  Honorable Stewart Dalzell

_____

Submitted March 25, 2010 for Possible Summary Action Pursuant to Third Circuit LAR
27.4 and I.O.P. 10.6

Before: FUENTES, JORDAN and HARDIMAN, Circuit Judges

Opinion filed: April 8, 2010
_____

OPINION
_____

PER CURIAM

        Yvette Madison appeals the District Court's order dismissing her complaint for

failure to state a claim.  For the reasons below, we will affirm.

        Madison filed a complaint in the District Court alleging that the staff of Jefferson

Hospital violated her constitutional rights by refusing to treat her based on her skin color. The District Court concluded that Madison had not alleged that the doctors and nurses of Jefferson Hospital were state actors and dismissed the complaint for failure to state a claim. Madison filed a notice of appeal.[1]

We have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's sua sponte dismissal of Madison's complaint for failure to state a claim is plenary. Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). We need not reach the issue of whether Madison can show that the appellees were state actors because she has not made sufficient factual allegations to support a claim of racial discrimination. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quotation omitted). Conclusory allegations are not entitled to the assumption of truth. Id. at 1951.

In her complaint, Madison alleged that she went to Jefferson Hospital because she had been badly beaten. Madison stated that a nurse would not wheel her into the bathroom when she needed to use it and when a social worker did help her, she bumped

---

[1] Madison filed her notice of appeal more than thirty days after the date of the District Court's order. See Fed. R. App. P. 4(a)(1). However, because the District Court did not set out the judgment in a separate document, the notice of appeal was timely filed. See Fed. R. Civ. P. 58(c)(2).

2

the wheelchair on a door.  Although she stated that her left foot was hurting, she complained that the nurse in the x-ray department was too cautious in how she touched her foot.  However, Madison stated that this might have been due to her odor.

Madison refused to let a white nurse draw her blood and told her she did not like the nurse.  After Madison asked the nurse how it felt to not be liked based on one's skin color, the nurse replied, "Yeah, that's right.  I'm a racist."  It is clear that this was a sarcastic remark made in response to Madison's statement and not an admission of racial discrimination.  Moreover, this nurse did not deny Madison treatment; in fact, it was Madison who refused treatment from this nurse and admittedly did so on the basis of race.

Madison asserted that she had been moaning in pain and a nurse did not seem to care.  When another nurse tried to start an intravenous line to give Madison morphine, he warned Madison that he would prick her with the needle.  She reacted by accusing him of calling her a "prick."[2]  When a doctor tried to explain the meaning of the word "prick," she would not listen.  Again, Madison's allegations do not show that she was denied treatment based on race; rather, she refused treatment over her misunderstanding of the meaning of a word.

Madison was seen by a doctor who examined her eye injuries.  She saw racial significance in the doctor's choice of an all white uniform which was unlike the other

---

[2] As a verb, the word "prick" means "to pierce with a sharp point."  Random House Dictionary of the English Language 1142 (1973).  Given the context, it is clear that this is the sense in which the nurse used the term.  Madison believed that the nurse was using the word in a slang sense.

doctors' blue scrubs. Madison contended that the exam the doctor performed on her swollen eye was very painful. When she asked for pain medication, he reminded her that she had refused the morphine. After examining her, he stated, "[w]e don't treat cases like this." While Madison pointed to this statement as proof of racial discrimination, there is nothing to suggest that the doctor was referring to Madison's race and not to the type of eye injury she had.

None of the factual allegations in the complaint, taken as true and considered individually or as a whole, support a claim of racial discrimination. Madison has not alleged any facts showing that she was not treated or was treated poorly based on her race. Her conclusory allegations of racial discrimination are insufficient.

Summary action is appropriate if there is no substantial question presented in the appeal. See Third Circuit LAR 27.4. For the above reasons, we will summarily affirm the District Court's order.[3] See Third Circuit I.O.P. 10.6. Madison's motion to expedite the appeal is denied. Madison's motion to stay the appeal is denied.[4]

---

[3] We agree with the District Court that it lacked jurisdiction over Madison's state law claims.

[4] We note that the Court and the Clerk's office handle thousands of appeals each year and strive to do so in a timely manner. That Madison's motions and appeals are not docketed, responded to, and decided as quickly as she would like is not evidence of racial discrimination.